IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA**

v.  Criminal Case No. 3:01cr304-11

**ALBERT RANDOLPH,**

**Defendant.**

### MEMORANDUM OPINION

This matter comes before the Court on Defendant Albert Randolph's Motion for Compassionate Release pursuant to § 603(b) of the First Step Act or, in the Alternative, for a Reduced Sentence Pursuant to § 404 of the First Step Act (the "Motion").[1] (ECF Nos. 705, 745, 784, 785.) The United States responded in opposition to each argument separately (the "Oppositions"). (ECF Nos. 795, 812.) Randolph replied to the first filing, (the "Reply"), but did not reply to the second and the time to do so has expired. (ECF No. 810.) The matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the Motion.

### I. Background

On November 20, 2001, the United States charged Randolph in a three-count superseding indictment with violating the Racketeering Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962(c) ("Count One"), conspiracy to distribute cocaine base, 21 U.S.C. § 846 ("Count Two"), and carjacking, 18 U.S.C. § 2119(1) ("Count Three"). (ECF No. 67.) On

---

[1] Although there are two filings, the contents are identical, thus the Court refers to the filings collectively as one Motion.

February 21, 2002, then 22 years old, Randolph pled guilty to Count One of the superseding indictment. (ECF No. 151; ECF No. 712, ¶ 4). The PSR describes the conduct underlying Randolph's offense. (ECF No. 712.)

Randolph was a member of the Fulton Hill Hustlers (the "FHH"), a criminal organization that "engaged in the distribution of cocaine base . . . and committed acts of violence" in the City of Richmond and Henrico County, Virginia. (ECF No. 712 ¶ 22.) Randolph operated within the FHH as a "street level" distributor between 1992 and 2001, purchasing "cocaine in quarter to half ounce and larger quantities, and then re-distribut[ing] the cocaine base in smaller user amounts." (ECF No. 712 ¶ 40.) Randolph is additionally responsible for the following crimes: The March 6, 1995 attack and robbery of Cornelius Smoot; the September 2, 1995 murder of Enoria Reid; the November 5, 1995 robbery and carjacking of Stephen Duncan; the April 20, 1996 attempted murder of Timi Martin; the November 22, 1996 attempted murder of Gerald Morrison; the November 27, 1996 attempted murder of Cornelius Smoot; the January 7, 1997 robbery of Derrick Johnson and Michael Ocasio; the July 13, 1997 drive-by shooting and attempted murder of eight individuals resulting in seven injured victims, three of whom were minors; and, the September 7, 1997 attempted robbery and shooting at Donald Keith Hite. (ECF No. 712 ¶¶ 24, 26, 29–30, 33–35, 37, 39–40.)

Prior to sentencing, the probation officer prepared the PSR for Randolph, summarizing his criminal history. Randolph fell into criminal history category V based on his prior convictions, which included driving with a suspended license; carrying a concealed weapon; possession of marijuana; forging public documents; eluding police; obstruction of justice; murder in the second degree (of Enoria Reed, mentioned above); and use of a firearm in commission of a felony. (ECF No. 712 ¶¶ 61–67.) Pursuant to the Sentencing Guidelines,

Randolph's total offense level of 42 and criminal history category of V resulted in a Guidelines sentencing range of 360 months to life imprisonment. (ECF No. 712, at 60.)

The PSR also provided information on Randolph's physical condition at the time of sentencing, noting he "suffers from asthma," but "describes his overall general health as good." (ECF No. 712 ¶ 90.) In his Motion, however, Randolph states he has since developed other medical issues including "having Stage III chronic kidney disease," and "potential sarcoidosis." (ECF No. 784, at 9–10.)

On May 24, 2002, United States District Judge James R. Spencer sentenced Randolph to life in prison to be served consecutively with a twelve-year prison sentence he was serving in Virginia state prison for the murder of Enoria Reid. Randolph is currently housed at USP Allenwood. *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/.

On February 3, 2021, Randolph filed a request for compassionate release with the Warden of USP Thompson, which the Warden denied on February 25, 2021. (ECF No. 784, at 3–4.) On July 21, 2020, Randolph sent a letter to the Court requesting a reduction in his sentence pursuant to § 404 of the First Step Act. (ECF No. 705.) On November 19, 2020, Randolph sent a letter to the Court inquiring about compassionate release. (ECF No. 745.) On April 5, 2020, Randolph filed the instant Motion for Compassionate Release or, in the Alternative, for a Reduced Sentence. (ECF Nos. 784, 785.)

In the Motion, Randolph argues his recently developed medical issues warrant his compassionate release. In late 2020 and early 2021, Randolph experienced issues with "significant kidney disease" resulting in a hospitalization, a biopsy surgery, and several doctors' visits. (ECF No. 784, at 7–9.) Randolph avers that his "uncertain prognosis" amounts to an extraordinary and compelling reason that warrants his release, especially given the COVID-19

pandemic. (ECF No. 784, at 10.) Randolph next argues that his "age at the time of his offense and the sea-change in juvenile sentencing jurisprudence" similarly constitute extraordinary and compelling reasons justifying his release. (ECF No. 784, at 10.) Lastly, Randolph argues he is "not a danger to the community and has an appropriate plan in place if released." (ECF No. 784, at 12.)

The United States opposes Randolph's request for compassionate release, arguing that Randolph has failed to establish an extraordinary and compelling reason for compassionate release. (ECF No. 795, at 6.) The United States contends that Randolph's "medical conditions do not make him particularly susceptible to COVID-19 and he has not established a particularized risk of contracting COVID-19 at his facility." (ECF No. 795, at 6.) The United States further contends that the statutory sentencing factors similarly weigh against Randolph's release, citing his extensive criminal history, the violent nature of many of his convictions, and his significant institutional disciplinary record. (ECF No. 795, at 16–22.) The United States also argues that Randolph's release plan is inadequate and that his rehabilitation efforts "do not outweigh the seriousness of his crime." (ECF No. 795, at 21.)

The United States also opposes Randolph's request for a reduction in sentence pursuant to § 404 of the First Step Act, arguing that "[t]he existence of one racketeering act that is a covered offense makes no difference . . ." in the "statutory penalty range." (ECF No. 812, at 7.) First, the United States contends that "[t]he Fair Sentencing Act did not modify the statutory penalty range for any Virginia state crimes, including murder, attempted murder, or robbery," and "Randolph does not contend otherwise." (ECF No. 812, at 3.) Next, the United States avers that:

> [a]lthough Randolph's conviction for Racketeering Act 17 was for conspiring to distribute 50 grams or more of crack cocaine is technically a covered offense, any

4

> change afforded by the First Step Act to that racketeering act had no effect on Randolph's sentence . . . [b]ecause the sentencing range for Virginia robbery carries up to life imprisonment, [thus] Randolph's maximum sentence for his conviction on Count One remains at life.

(ECF No. 812, at 3.) The Government then addressed *United States v. Terry*, decided by the United States Supreme Court less than one month prior to the Government filing its Opposition. (ECF No. 812, at 3.) In *Terry*, "whether a particular offense is a covered offense, a court considers not the broader statute under which a defendant was convicted, but instead the particular elements that form the defendant's offense[, therefore,] . . .the court evaluates whether the Fair Sentencing Act modified the statutory penalty range for that offense. (ECF No. 812, at 2) (citing *United States v. Terry*, 141 S.Ct. 1858 (US 2021)). Thus, "[b]ecause the RICO offense here remains unaffected by the change in law, it is not a covered offense, and Randolph cannot get relief from § 404 of the First Step Act." (ECF No. 812, at 2.)

As of November 21, 2022, Allenwood FCC, which includes all 3 security levels in the Allenwood prison system, including USP where the Defendant is housed, has vaccinated 2474 inmates and 502 staff. *See* Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus. The BOP reports that one inmate and zero staff at Allenwood USP currently have positive COVID-19 tests. (*Id.*)

## II. Legal Standards

### A. Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under

18 U.S.C. § 3582(c)(1)(A).[2] Prior to the First Step Act in 2018, the BOP had the sole authority to petition the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

---

[2] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

1. **Exhaustion of Administrative Remedies**

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time."). "Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020); *see also United States v. Kibble*, 992 F.3d 326, 330 (4th Cir. 2021).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329,

332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

### 2. Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons." U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020). The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified: the petitioner's medical condition, age, family circumstances, and other reasons. U.S.S.G. § 1B1.13, n.1 (A)–(D).[3]

---

[3] The United States Sentencing Guideline § 1B1.13 provides that:

Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—

(1) (A) extraordinary and compelling reasons warrant the reduction; or
(B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283; *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021) (concluding that § 1B1.13 does not apply to compassionate release motions that inmates (or counsel acting on behalf of inmates) file directly with the district court). Furthermore, the Guidelines, while helpful, are merely advisory and do not bind the Court.

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

### 3. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant post-conviction

---

(2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and

(3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

9

conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### B. Modification of a Sentence under the First Step Act § 404

In addition to § 603(b) of the First Step Act, which addressed compassionate release, the First Step Act amended drug penalties in a different provision of the statute. Through § 404, the First Step Act expressly permits sentence modifications for certain drug offenses. *See United States v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019), *as amended* (Nov. 21, 2019) ("the distinct language of the First Step Act compels the interpretation that motions for relief under that statute are appropriately brought under § 3582(c)(l)(B)").

The First Step Act defines a "covered offense" as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Pub. L. No. 111-220; 124 Stat. 2372), that was committed before August 3, 2010." First Step Act at § 404(a). These specified sections modified the drug amounts required to trigger mandatory minimums for crack cocaine trafficking offenses from 5 grams to 28 grams with respect to the 5–year mandatory minimum and from 50 grams to 280 grams with respect to the 10–year mandatory minimum. Fair Sentencing Act, Pub. L. No. 111-220, § 2(a), 124 Stat. 2372, 2372. The Fair Sentencing Act also eliminated the 5–year mandatory minimum for simple possession of crack. *Id.* at § 3, 124 Stat. 2372, 2372; *see also Dorsey v. United States*, 567 U.S.

260, 276–77 (2012) (explaining sentencing discrepancies for certain drug offenses that the Fair Sentencing Act sought to remedy). "Although Section 2 of the Fair Sentencing Act did not alter the terms of imprisonment specified in Subsections 841(b)(1)(A)(iii) and (B)(iii), it did alter the amounts of crack cocaine required to trigger those terms." *United States v. Woodson*, 962 F.3d 812, 815 (4th Cir. 2020). Therefore "the Fair Sentencing Act changed the quantities of crack cocaine to which Subsection 841(b)(1)(C) applies, [and] 'modified' the statutory penalties of that subsection for purposes of crack cocaine offenders within the meaning of the First Step Act." *Id.* at 817.

The First Step Act imposes three eligibility requirements. To qualify for consideration for relief pursuant to the First Step Act, a defendant must show that he or she (1) committed a covered offense before August 3, 2010; (2) did not have his or her sentence imposed or reduced under sections 2 or 3 of the Fair Sentencing Act of 2010; and, (3) did not file a previous motion under § 404 of the First Step Act that that Court decided on the merits. *See United States v. Hardnett*, 417 F. Supp. 3d 725, 734 n.7 (E.D. Va. 2019) (E.D. Va. Oct. 24, 2019) (quoting First Step Act statute and limitations contained therein).

After finding that a defendant committed a covered offense under First Step Act § 404, the district court must perform three steps when evaluating a sentence reduction pursuant to that section: (1) "accurately recalculate the Guidelines sentence range;" (2) "correct original Guidelines errors and apply intervening case law made retroactive to the original sentence;" and, (3) consider the § 3553 factors to determine an appropriate sentence. *United States v. Collington*, No. 19-6721, 2021 WL 1608756, at *4 (4th Cir. Apr. 26, 2021) (citations omitted). In this manner, § 404 proceedings, while not a plenary resentencing, "contemplate[] both a

11

broader resentencing inquiry and greater procedural protections than § 3582(c)(2) modifications." *Id.* at *10.

### III. Analysis

After due consideration, the Court will deny the Motion. The Court first determines that Randolph is not eligible for compassionate release under § 603 and next finds Randolph is similarly ineligible for a reduction in sentence under § 404.

**A.  The Court Will Deny Randolph's Motion for Compassionate Release Because He Does Not Show Extraordinary and Compelling Reasons for Release and the 18 U.S.C. § 3553(a) Sentencing Factors Do Not Weigh in Favor of His Immediate Release**

The Court first determines that Randolph has sufficiently exhausted his administrative remedies. Pursuant to 18 U.S.C. § 3582(c)(1)(A), Randolph filed his Motion for Compassionate Release with the Court after the denial of his request by the Warden. (ECF No. 784, at 3–5.)

Although Randolph has exhausted his administrative remedies, the Court will deny the Motion because Randolph does not offer any "extraordinary and compelling reasons" to support his request for release. 18 U.S.C. § 3582(c)(1)(A)(i). In response to the COVID-19 pandemic, courts have found extraordinary and compelling reasons for compassionate release "when an inmate shows both a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his prison facility." *Feiling*, 2020 WL 1821457, at *7 (emphasis added). Randolph contends that his "significant health issues coupled with his youth at the time of his offenses are extraordinary and compelling reasons." (ECF No. 784, at 7.) The Court acknowledges that Randolph has been diagnosed with "stage 3b chronic kidney disease[,]" (ECF No. 789-1, at 514), and that "patients with kidney disease are at a higher risk for severe illness if they catch COVID-19[,]" (ECF No. 784, at 10). The Court also takes note of Randolph's physician's concerns regarding the possibility of sarcoidosis. (ECF No. 789-1, at 528–29.)

12

However, Randolph's renal function has improved since his hospitalization, (ECF No. 789-1, at 514), and Randolph submits that the prison staff continues to monitor his condition, (ECF No. 784, at 9.) In addition, as noted in the Reply, "Randolph has received both doses of the COVID vaccine," thus greatly decreasing such vulnerability to the virus. (ECF No. 810 at 3.) Further, zero inmates and zero staff at Allenwood USP are currently positive. *See* Bureau of Prisons, *COVID-19*, https://www.bop.gov/coronavirus. Though he may show a "particularized susceptibility to the disease," the Court finds that Randolph does not face a "particularized risk" of contracting COVID-19 at Allenwood USP, thus he does not present extraordinary and compelling reasons to justify his immediate release. *Feiling*, 2020 WL 1821457 at *7.

The Court next determines that the applicable § 3553(a) sentencing factors similarly do not weigh in favor of Randolph's immediate release from incarceration. Upon review, Randolph's underlying convictions and extensive criminal history demonstrate that he presents a threat to the public due to his disregard for the law and that conditions of release will not assure the safety of the community. Randolph began participating in criminal activity at the age of 12 and continued to pursue a life of criminal activity until his incarceration at the age of 19. Not only was he involved in a large drug conspiracy with his street gang, the Fulton Hill Hustlers, but Randolph also admitted to seventeen other RICO crimes that were all violent in nature. Notably, these crimes include murder, attempted murder, robbery, and a drive-by shooting that injured seven victims, three of whom were minors. (ECF No. 712, at 7–13.) The Court thus finds that the seriousness of Randolph's offenses and the need to protect the public outweigh his immediate release.

While Randolph argues that his age at the time of his underlying offenses (he was 17 when he murdered Reid) mitigates the need to continue to incarcerate him, Randolph shows a

13

continued disregard for the law though his significant institutional disciplinary history. In addition to several violations while in state custody, Randolph's federal record includes sanctions for possessing dangerous weapons, possessing hazardous tools, possessing drugs/alcohol, disruptive conduct, indecent exposure, refusing to obey orders, being insolent to staff, and multiple incidents of engaging in sexual acts. (ECF No. 795-4.) Although Randolph contends that "his history does not contain any infractions for violen[t] acts," and that "having an infraction history is not an absolute barrier to receiving a sentence reduction," the Court finds this factor weighs against his release. (ECF No. 810, at 7.)

Randolph's participation in rehabilitation programs similarly does not overcome the relevant statutory sentencing factors to support his immediate release. Randolph contends that his Motion should be granted because he has engaged in many educational, psychological, and vocational opportunities and "has also worked throughout his time in prison." (ECF No. 784, at 13.) In *United States v. Martin*, the United States Court of Appeals for the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions. 916 F.3d at 397–98. The Fourth Circuit has explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken." *Id.* at 397. However, Congress has made clear that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). With these dictates in mind, the Court acknowledges Randolph's participation in these programs during his time in prison, but these measures do not warrant his early release in light of the seriousness of his crimes and institutional disciplinary history.

Finally, the Court recognizes the grave health risks prisoners have faced during this pandemic and commends the nationwide efforts to promptly vaccinate prison staff and inmates. The Court acknowledges that Randolph has serious medical concerns, which makes his request for release during a pandemic difficult. Fortunately, Randolph has obtained two doses of the vaccine and the BOP reports that a majority of the inmates at Allenwood USP are now vaccinated. Considering the foregoing, the Court concludes that the current record does not justify Randolph's immediate release from federal imprisonment.

### B. The Court Will Deny Randolph's Motion for a Reduced Sentence Because His Offense is Not Covered by § 404 of the First Step Act

In light of both the United States Supreme Court's decision in *Terry v. United States*—as well as this Court's application of the *Terry* test to a RICO offense in *United States v. Allen*—the Court finds that Randolph's RICO violation is not a covered offense within the meaning of § 404 of the First Step Act. Under that section, offenders are eligible for a reduction in their sentence only if they previously received "a sentence for a covered offense." 21 U.S.C. 841 § 404(b). A "covered offense" is "a violation of a Federal criminal statute, the statutory penalties for which were modified by" certain provisions in the Fair Sentencing Act. § 404(a).

Shedding light on what constitutes a covered offense under § 404, the Supreme Court in *Terry* noted that "'statutory penalties' refers to the entire, integrated phrase 'a violation of a Federal criminal statute.'" 141 S. Ct. at 1862. Thus, courts must "focus [on] the statutory penalties for [the defendant's] *offense*, not the statute or statutory scheme." *Id.* at 1863. As this Court succinctly summarized in *Allen*, *Terry* dictates that courts "examin[e] the elements of the offense and determin[e] if the statutory penalties that would result from a conviction charging those elements changed in 2010 with the passage of the Fair Sentencing Act." *United States v. Allen*, 2022 WL 2124495, at *6 (E.D. Va. June 13, 2022).

15

The *Allen* Court held that a RICO offense under 18 U.S.C. § 1962(d) did not qualify as "covered" under this test. It explained that:

> [a]lthough the Fair Sentencing Act modified the statutory penalties for the specific racketeering activities that form a predicate for Defendant's RICO conspiracy conviction, the element of the RICO conspiracy conviction does not depend on 'whether crack was involved or on the quality of crack involved.' Instead, it required the agreement to commit a 'racketeering activity,' which does not depend on the type or quantity of the drug.

*United States v. Allen*, No. 3:03cr394, 2022 WL 2124495, at *8 (E.D. Va. June 30, 2022) (quoting *United States v. Thomas*, 32 F. 4th 420, 427 (4th Cir. 2022)). So too here. The Fair Sentencing Act undoubtedly modified the penalties for the predicate activity for Randolph's RICO offense, but it did not alter the penalties imposed for the RICO offense itself.[4] *See Allen*, 2022 WL 2124495, at *8 ("That a covered offense could have formed the predicate for [one of the elements] does not change the analysis. [That] element could include any number of racketeering activities, including other drug violations that do not involve quantities of crack cocaine implicated by the Fair Sentencing Act.") The Court concurs with the *Allen* court's thorough consideration of this issue and finds that Randolph's § 1962(c) violation is not a "covered offense."

Moreover, even if Randolph's § 841(b) sub-count were enough to make his § 1962(c) conviction a covered offense, if the Fair Sentencing Act were in effect at the time of Randolph's sentencing, his Total Offense Level and Guideline sentence would have, in fact, increased. (ECF 815.) Because of Randolph's conviction for murder and his other RICO sub-counts, after adjusting for enhancements and grouping, his advisory range would have been life—a higher

---

[4] Moreover, as the United States identifies, Randolph's 21 U.S.C. § 841(b)(1)(A)(iii) violation was merely one of several other (non-drug related) activities that formed predicate activities for his RICO conviction.

16

range than Randolph was given at his conviction in 2002. (ECF 815.) Thus, even if his § 1962(c) conviction *did* qualify as a covered offense, the Court, in its discretion, would still decline to reduce Randolph's sentence on this ground.[5]

### IV. Conclusion

For the reasons stated above, the Court will DENY the Motion. (ECF Nos. 784, 785.) An appropriate Order shall issue.

Date: 11/22/2022
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

---

[5] That a defendant is First Step Act-eligible does not necessitate that a court reduce that defendant's sentence. The First Step Act makes clear that even if a defendant is eligible for a sentence reduction, the decision whether to grant a reduction remains within the district court's discretion. See *United States v. Hardnett*, 417 F. Supp. 3d 725, 734 n.7 (E.D. Va. 2019) (quoting First Step Act statute and limitations contained therein).